GUY N. SCOTT ET AL., APPELLEES, v. METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

300 N. W. 835

FILED NOVEMBER 21, 1941. No. 31204.

*Beghtol, Foe & Rankin* and *Walter E. Nolte,* for appellant.

*Kenneth S. Wherry, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an action at law to recover $1,000 alleged to be due the plaintiffs on a policy of life insurance written by the defendant upon the life of Hazel S. Scott, plaintiffs' mother. From a verdict and judgment for plaintiffs the defendant appeals.

The record shows that the policy was issued on March 7, 1939, and that all premiums had been paid. The defendant alleges, however, that the assured made false and fraudulent statements in making application for the policy by stating that her health was excellent when she was in fact suffering from cancer, and by stating that she had consulted no physicians, healers or other practitioners and attended no clinics or hospitals during the five years immediately prior to making the application, except one, when in truth and fact several doctors had been consulted during the period. Defendant alleges that said false and fraudulent statements were relied on by the company in accepting the application, and by their medical examiners in making the medical examination, to such an extent that the policy would not have been issued if such false and fraudulent statements had not been made. These issues were submitted to the jury and decided favorably to plaintiffs.

The defendant complains chiefly on the refusal of the trial court to admit certain testimony of Dr. C. W. Thomas in evidence. The offer of proof made shows that Dr. Thomas would testify that during the years 1931 to 1935, inclusive, on occasions when the relationship of physician and patient existed, he had diagnosed the case of Hazel S. Scott as cancer and that he had at that time advised her of this condition. Was this evidence admissible? We think not.

Our statute, section 20-1206, Comp. St. 1929, bars such evidence as incompetent upon objection being made that it is a privileged communication. Under section 20-1207, Comp. St. 1929, it is provided that such evidence may be admitted if the privilege be waived or if the party in whose favor the privilege exists shall offer evidence with reference to the physical or mental condition of the person involved, or the alleged cause thereof.

It is first urged that the physician's certificate showing the cause of death, furnished by the beneficiaries as a part of the proofs of death and offered in evidence by plaintiffs, constitutes such a waiver. According to the weight of authority, where an insurance policy does not contain a provision for a waiver of the privilege, the introduction in evidence of a certificate of death by an assured's physician does not waive the provisions of the statute against physicians testifying to privileged communications received in the course of professional employment. *Fidelity & Casualty Co. v. Meyer*, 106 Ark. 91, 152 S. W. 995. The defendant, under the guise of ascertaining the fact of death, has no right to insist upon information concerning the cause of death as that is not relative to the requirements of the policy. Physicians' statements contained in a proof of death concerning the nature and extent of the last sickness must be regarded as gratuitous.

The record shows a written waiver of the privilege given by one of the beneficiaries. It is limited in time by its terms to a period of three years immediately prior to its date. The offered testimony of Dr. Thomas, drawn in question here, concerned knowledge and happenings occurring outside the scope of the waiver. Clearly, the waiver can have no application to such evidence. Our examination of the record reveals that the trial court, in the light of the rules herein announced, ruled correctly on all objections made to the introduction of evidence by the defendant. There is evidence in the record that the assured had consulted with physicians within five years of the making of the application for insurance which were not therein listed. The evidence shows that she was treated for colds, overly tense nerves, indigestion and minor things common to most persons. There is nothing in the record to show that any of these things were related to or material to the insurance risk. Nor does it appear from the evidence in the record that such incomplete answers were made with intent to deceive or defraud, except such inference as may be drawn from the fact that the answers were incomplete. Clearly,

this raised a question for the jury which is foreclosed by the verdict.

The evidence shows that the assured was advised on November 6, 1939, or within a few days thereafter, that she was suffering from a cancer. There is evidence in the record that it would take at least one year for the cancer to reach the stage of development to which it had progressed at the time of its discovery. Other physicians testified to the uncertainty of trying to fix the period required for the cancer to develop to the stage in which it was found. Whether or not the cancer actually existed on the date the policy was issued is a question of fact under the record for the jury to determine. There is no competent evidence in the record that assured knew she had a malignant condition when she applied for the policy of insurance. The applicable rule is well stated in *Carpenter v. Sun Indemnity Co.*, 138 Neb. 552, 293 N. W. 400, wherein this court said:

"In order for alleged misrepresentations in an application for insurance to constitute a defense to an action on the insurance contract evidenced by the policy in writing, it is incumbent upon the insurance company to plead and prove: (1) That the statements and answers were made as written in the application; (2) that they were false; (3) that they were false in some particular material to the insurance risk; (4) that they were made knowingly by the insured with the intent to deceive; (5) that the insurance company relied and acted upon such statements or representations, and was deceived by them to its injury; (6) that the false statements so relied upon constitute a part of the completed application indorsed upon or annexed to the insurance policy in suit as delivered to the assured."

We think that the trial court was right in submitting the case to the jury and that the evidence was sufficient to sustain the verdict returned.

AFFIRMED.